1. EXECUTORS AND ADMINISTRATORS—SALE ON CREDIT—SECURITY FOR PRICE.
The "approved security" which an executor must take when he sells property of the estate on credit (Code Civ. Proc. § 2717), is national and state bonds and mortgages on real estate.

2. SAME—WHEN SALE ON CREDIT IS AUTHORIZED.
Code Civ. Proc. § 2717, authorizing executors, when necessary for the payment of debts and legacies, to sell sufficient of decedent's personalty, on credit, with "approved security," does not authorize an executor to sell on credit except for the payment of debts and legacies.

3. SAME—GOOD FAITH.
Where an executor sold personalty of testator on credit, taking a note with an indorser for the price, after examining the records of the county clerk's office and satisfying himself that the note was good, and such as business men ordinarily accept in commercial dealings, he is not relieved from liability, in case the note proves worthless, by Code Civ. Proc. § 2717, providing that an executor is not responsible for any loss happening on a sale "when made in good faith and with ordinary prudence."

4. SAME—APPROVAL OF SECURITY.
Code Civ. Proc. § 2717, authorizing an executor to sell personalty of the estate on credit, "with approved security," requires the security to be approved by the surrogate.

5. SAME—EXPENSE OF ATTEMPT TO COLLECT.
An executor who sells personalty of the estate on credit, and takes the note of the buyer for the price, without the "approved security" required by Code Civ. Proc. § 2717, will not be allowed expenses incurred in attempting to collect the note.

6. SAME—INTEREST.
An executor who takes a note without "approved security" (Code Civ. Proc. § 2717), though liable for the amount of the note, in case it proves worthless, will not be held liable for interest thereon where it appears that there was due him from the estate, for commissions and for moneys advanced, more than the amount of such interest, and that there were no assets which could be applied thereto.

Judicial settlement of the accounts of John N. Woodbury as executor and trustee of the estate of Jennette Beebe, deceased.

H. B. Coman, for executor.
M. H. Kiley and John E. Smith, for legatee.

KENNEDY, S. Jennette Beebe died in the town of Smithfield, in this county, in 1873, leaving a farm of 160 acres and personal estate amounting to about $5,000. She left a will by which her husband and two young children were to have their support from her

property until the children became 21 years of age, at which time it was to be disposed of according to the terms of the will. In the year 1876 the executor sold at auction the stock and farming utensils upon the farm. At the sale, property of the value of $391 was sold upon credit, a note being given by the purchasers thereof, due in nine months thereafter, with an indorser thereon. A short time after the sale, the makers of the note went into bankruptcy, and the indorser became irresponsible, so that when the note matured it was uncollectible. Before the executor took the note, he made inquiry of various persons as to the financial responsibility of the makers and indorser, examined the records of the county clerk's office, and satisfied himself that the note was good, and such as business men would ordinarily accept in commercial dealings. Upon this accounting, the residuary legatee seeks to hold the executor responsible for the amount of the note, with interest from the time it was given, upon the ground that he had no right to sell the property on credit. The executor claims that he should not be held liable for the loss, because he acted in good faith and with reasonable care and diligence. He also claims exemption from liability for the reason that the note, with an indorser thereon, was an "approved security," within section 2717 of the Code, which is as follows (in part):

"If an executor or administrator discover that the debts against any deceased person, and the legacies bequeathed by him, cannot be paid and satisfied without a sale of the personal property of the deceased, the same, so far as may be necessary for the payment of such debts and legacies, must be sold. The sale may be public or private, and, except in the city of New York, may be on credit not exceeding one year, with approved security. The executor or administrator is not responsible for any loss happening on the sale when made in good faith and with ordinary prudence," etc.

We must hold that neither the executor's good faith and diligence nor the statute exempts him from liability for the loss. It will be observed that the executor has no right to sell upon credit except for the payment of the debts and legacies of the deceased. As the testatrix left nearly $5,000 of personal property, while her debts amounted to only a few hundred dollars, it was unnecessary to sell it for the payment of her debts. As the legacies payable at the end of a year from the death of Mrs. Beebe amounted only to the sum of $1,042.88, while the legacy to her daughter was not payable until she became 21 (many years after the auction), it was unnecessary to sell on credit for the payment of any legacy. The sale, therefore, upon the executor's theory of the law, was not justifiable; but, if it be assumed that it was necessary to sell the property for the payment of debts and legacies, the construction which we shall give to section 2717 of the Code renders him liable for the loss, because the note was not such an approved security as the law contemplates. In commercial dealings between private individuals and corporations, notes, bonds, stocks, and other forms of contract may be taken for or as security for debts and other purposes, and may be recognized between the parties and by courts under the name of "securities"; but in legal proceedings the law requires security of a different character, and over which the courts have control,—a security which makes the debt assured; something which makes its payment cer-

tain, which makes sure the performance of a contract, and prevents loss from insolvency or otherwise. This note, as between the makers and the executor, was not and could not be taken as a security, for the reason that it only changed the form of the debt from a book account to a promissory note. It added nothing whatever to the security or the safety of the debt; so that the only security that there could possibly be was the indorsement of one equally as irresponsible and worthless as the makers of the note.

The settlement of estates is a special proceeding, under the supervision and control of the courts; and, though the Code says that an executor or administrator may sell on credit for certain purposes with approved security, we shall hold that in such cases approved security means national and state bonds and mortgages on real estate, because it is an investment for the time being of the assets of the estate, and courts have held rigidly to the rule that if trustees, without express authority in some legal form, invest in notes, stocks, or bonds, they will be held responsible for all losses occasioned by such investments. The courts, in so deciding, have imposed no harsh nor unreasonable rule upon them in the discharge of their duties, but have given them a safe, simple, and reasonable rule of conduct, easily complied with, and in obeying which they assume no risk, and the estate they represent can sustain no loss. We have said this note was not such a legal security as the executor was authorized to take, because it was not such a one as the courts recognize and approve in the care and management of estates by trustees. We go further, and say that, if the executor had a right to sell upon credit and take the notes of purchasers, he would still be liable for the loss, because the security was not approved by the surrogate before it was accepted by him. The statute says that executors and administrators may sell upon credit with "approved security." Approved by whom? As the law is silent on this point, we assume, in analogy to the law and practice in civil actions and other special proceedings, that the security is to be approved by some court having jurisdiction of the matter. It is one of the duties of surrogates to direct and control the conduct of executors and administrators in the settlement of estates; but the construction of the Code sought to be maintained in this proceeding would enable them to exchange valuable assets of an estate for such alleged securities as in the end might prove worthless, or afford no adequate protection to an estate, and would exclude the surrogate from having any control or jurisdiction over one of the necessary, indispensable, and most important acts of an executor or administrator. If this right exists, the estate of the dead is placed in a most perilous, hazardous, and unprotected condition, because its assets would be placed beyond the control of the courts, and often in the hands of those who, however honest they may be, are personally irresponsible and unable to make good any loss which their acts may have brought on the estate. No greater opportunity for fraud and dishonesty could be devised than this statute as construed by the executor; no greater opportunity for carelessness and negligence, or for those acts, done in good faith perhaps, yet which are often so ruinous and disastrous to estates;

it would simply be a legal shield for lack of judgment, vigilance, discretion, for all those acts by which heirs and legatees could be cheated, wronged, and deprived of that which rightfully belonged to them. If, however, it be asserted that the law is so drawn that there are doubts as to whether approved security means such only as is approved by the surrogate and the courts of this state, instead of the executor, we think it the duty of courts to give the benefit of such doubts, if there are any, to the estate, and construe it in such manner as shall be harmless to an executor or an administrator, and at the same time protect the estate from all possibility of loss from their acts in the sale of property upon credit for the payment of debts and legacies.

But it is claimed that the word "security" does not necessarily mean state or national bonds or mortgages on real estate, for the reason that the word "security," whenever used in the Code, means a bond or undertaking with one or more sureties, and that hence there is no positive rule or statute as to what will constitute a security in legal proceedings, so that a note or bond may be regarded as an approved security. We do not think such an inference is justified, but, on the contrary, hold that the law and practice of the courts in regard to bonds in actions and special proceedings suggest the conclusions that we have stated, for the reason that bonds thus taken must in all cases be approved by the court or a judge thereof. In such cases the parties interested are afforded ample protection, since they may cause a bondsman to be examined as to the character and amount of his property, his indebtedness, and as to such other facts as will enable them to determine whether the security is ample and satisfactory, and, if found insufficient, other bondsmen must be obtained, and, besides this, if at any time the bond for any cause becomes inadequate, another one may be required to be given and approved by the courts; so that at all times during the pendency of an action a party entitled to a bond has ample protection from loss, while under the statute in question a bond would be no better than a note, both equally good or equally valueless, because neither the executor nor the parties interested would have the power to compel a new bond to be given if its makers became insolvent or of doubtful responsibility. The fact that heirs and legatees would be powerless to protect themselves against the acts of an executor in taking bonds and notes and other pretended securities when he sells upon credit justifies the conclusion that approved securities, when taken by him on a credit sale, mean such only as are approved by the courts and by surrogates, and not by the executor. For the reason stated, we must hold the executor liable for the $391, and also for a similar note of $30 which he has been unable to collect.

The executor has charged this estate for the expenses he incurred in attempting to collect said notes. These items we disallow, because it was through his own negligence in taking the notes that the costs were made. When he accepted the notes, he took upon himself the hazard of their nonpayment, and he has no right to subject this estate to the payment of expenses incurred through his own fault and neglect of duty. The surrogate of this county has

had but one inflexible rule in regard to the sale of the assets of an estate by executors and administrators, to wit, that they must be sold for cash, and that, if sold on credit, executors and administrators will be held personally liable for all losses and expenses that may occur by reason of such sale; and we must decline to make this case an exception from this safe rule of conduct in the settlement of estates.

We are asked to hold the executor liable for interest on the notes in question from their date to the present time. This we should do were it not for the fact that an adjustment of his accounts shows that he has advanced to the estate $332.95 more than he has received; his commissions, amounting only to the sum of $152.12, are unpaid,—making in all $485.07, which cannot be collected from the estate. Moreover, his executorship and trusteeship have been running for 21 years, requiring much time, care, and responsibility, for which he only gets his commissions, being only about seven dollars a year for his services,—a very inadequate, but still his only legal, compensation. Under such circumstances, it would be unjust to charge him with interest.

The respective counsel will readjust the accounts in accordance with the above conclusions. Ordered accordingly.